IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| NEGUS-SONS, INC., | ) | |
| | ) | CASE NO. BK09-82518-TJM |
| Debtor(s). | ) | A10-8064-TJM |
| RICK D. LANGE, Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | CHAPTER 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| MUTUAL OF OMAHA BANK; | ) | |
| UNITED STATES TREASURY, INTERNAL | ) | |
| REVENUE SERVICE; CONTRACTORS, | ) | |
| LABORERS, TEAMSTERS and ENGINEERS | ) | |
| PENSION PLAN; CONTRACTORS, | ) | |
| LABORERS, TEAMSTERS and ENGINEERS | ) | |
| HEALTH and WELFARE PLAN; and | ) | |
| INTERNATIONAL UNION OF OPERATING | ) | |
| ENGINEERS, LOCAL NO. 571, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is before the court on cross-motions for summary judgment by Mutual of Omaha Bank (Fil. No. 21) and the Chapter 7 trustee (Fil. No. 31), and oppositions to the bank's motion by the labor union entities (Fil. No. 39) and the IRS (Fil. No. 42). Brian S. Kruse represents the bankruptcy trustee; Douglas E. Quinn represents Mutual of Omaha Bank; Mark C. Milton represents the IRS; and Maynard H. Weinberg represents the labor union entities. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

The trustee's motion for partial summary judgment is granted. The bank's motion for summary judgment is denied.

This adversary proceeding concerns the existence, priority, and avoidance of liens on personal property of the estate. The property was subject to filed U.C.C. financing statements which were terminated in 2008. Defendant Mutual of Omaha Bank contends the terminations were ineffective and/or void, so the trustee filed this lawsuit to assert his avoidance powers and deal with competing claims to the property. The parties have now brought the issue of the effectiveness of the terminations before the court on summary judgment.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Ricci v. DeStefano, ___ U.S. ___, 129 S. Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078–79 (8th Cir. 2008). See also Celotex Corp., 477 U.S. at 324 (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

The following facts are uncontroverted or established by the record:

1. Negus-Sons, Inc., was a Nebraska company primarily engaged in earth-moving for commercial construction projects.

2. It borrowed operating funds from Nebraska State Bank of Omaha.

3. Mutual of Omaha Bank is the successor in interest to Nebraska State Bank of Omaha.

4. Negus-Sons, Inc., filed a Chapter 11 bankruptcy petition on September 23, 2009.

5. The case was converted to one under Chapter 7 on February 18, 2010, on the motion of the United States Trustee. Rick D. Lange was appointed as the case trustee.

6. On December 30, 2003, the debtor executed a business loan agreement and promissory note with Nebraska State Bank of Omaha for Loan 21040-03 ("Loan No. 3"), in the amount of $1,469,077.63. The maturity date was June 30, 2008, and the loan was secured by a deed of trust and guaranty, both dated December 30, 2003.

7. On May 15, 2006, the debtor executed a promissory note with Nebraska State Bank of Omaha for Loan 2104007 ("Loan No. 7), in the amount of $1,030,217.00. The maturity date was June 10, 2008, and the loan was secured by a commercial security agreement dated May 15, 2006, a deed of trust dated May 15, 2006, and a guaranty dated April 4, 2005.

8. Nebraska State Bank of Omaha filed two U.C.C. financing statements with the Nebraska Secretary of State.

      a.      Nebraska State Bank of Omaha filed financing statement 9803165525-1 ("Financing Statement 1") on June 3, 2003, evidencing a blanket lien on substantially all of the debtor's assets. It was terminated on August 11, 2008.

      b.      Nebraska State Bank of Omaha filed financing statement 9903287503-4 ("Financing Statement 4") on July 28, 2003. It contained a subordination agreement from Nebraska Machinery Company with regard to Financing Statement 1. Financing Statement 4 was also terminated on August 11, 2008.

9. In September 2007, the debtor and Wells Fargo Equipment Finance, Inc., entered into a financing arrangement for a revolving loan secured by certain equipment.

10. In connection with the revolving loan, a collateral analyst for Wells Fargo Equipment Finance wrote to Nebraska State Bank of Omaha requesting payoff figures for the two financing statements. The letter contained the following language:

> This letter is to confirm that upon receipt of funds from Wells Fargo Equipment Finance, Inc. for the entire payoff of all accounts that you agree to terminate your security interest in all the collateral [of Negus-Sons, Inc.] . . .
>
> We have prepared an amendment to your UCC filing(s) to effectuate these terminations. Please indicate your consent to the filing of these amendments, and your authorization for us to file them on your behalf, by signing in the space provided below.

Letter of Sept. 20, 2007, from Jennifer Fry (Fil. No. 41, attachment 5). An eight-page list of equipment and other personal property was attached to the letter.

11. A Nebraska State Bank loan administrative assistant responded the next day with the payoff amount as of September 28, 2007. The total was $853,984.08. The letter noted that "[u]pon receipt of payoff all liens will be released." Letter of Sept. 21, 2007, from Kimberly J. Murray (Fil. No. 41, attachment 5).

12. Bruce Cramer, a senior vice-president at Nebraska State Bank, signed the consent requested by Wells Fargo.

13. Loan No. 7 was marked paid on September 28, 2007.

14. The termination statements were not filed immediately upon receipt of the funds. Instead, their filing was delayed nearly a year, until August 11, 2008.

15. On May 15, 2008, the debtor executed a promissory note with Mutual of Omaha Bank for Loan 2104009 ("Loan No. 9"), in the amount of $303,262,50. The maturity date was November 15, 2008, and the loan was secured by a commercial security agreement, a deed of trust, and guaranties, all of which were dated May 15, 2008.

In its motion for summary judgment, Mutual of Omaha Bank argues that Wells Fargo wrongly released its liens, leaving its security interests unperfected. The bank asserts that it intended to release its lien only on the equipment listed in the schedule attached to Wells Fargo's letter and not as to any other collateral covered by the blanket lien.

The filing and effect of termination statements are governed by section 9-513 of the Nebraska Uniform Commercial Code:

> 9-513. Termination statement
>
> (a) Within twenty days after a secured party receives an authenticated demand from a debtor, the secured party shall cause the secured party of record for a financing statement to send to the debtor a termination statement for the financing statement or file the termination statement in the filing office if:
>> (1) except in the case of a financing statement covering accounts or chattel paper that has been sold or goods that are the subject of a consignment, there is no obligation secured by the collateral covered by the financing statement and no commitment to make an advance, incur an obligation, or otherwise give value;
>> (2) the financing statement covers accounts or chattel paper that has been sold but as to which the account debtor or other person obligated has discharged its obligation;
>> (3) the financing statement covers goods that were the subject of a consignment to the debtor but are not in the debtor's possession; or
>> (4) the debtor did not authorize the filing of the initial financing statement.
>
> (b) Except as otherwise provided in section 9-510, upon the filing of a termination statement with the filing office, the financing statement to which the termination statement relates ceases to be effective. . . .
>
> (c) There is no fee for the filing of a termination statement.

Sections 9-510 and 9-509 provide in relevant part as follows:

> § 9-510. Effectiveness of Filed Record.
>
> (a) A filed record is effective only to the extent that it was filed by a person

that may file it under Section 9-509.

§ 9-509. Persons Entitled to File a Record.

(d) A person may file an amendment other than an amendment that adds collateral covered by a financing statement or an amendment that adds a debtor to a financing statement only if:
(1) the secured party of record authorizes the filing; or
(2) the amendment is a termination statement for a financing statement as to which the secured party of record has failed to file or send a termination statement as required by Section 9-513(a) or (c), the debtor authorizes the filing, and the termination statement indicates that the debtor authorized it to be filed.

One of the bank's arguments is that the financing statements secured both Loan No. 3 and Loan No. 7, so they should not have been terminated simply because Loan No. 7 was paid off. However, the record indicates Loan No. 3 was secured by a deed of trust and a guaranty, not by personal property.[1] The third loan, Loan No. 9, did not exist at the time of the Wells Fargo transaction. Accordingly, when the bank received its requested payout for Loan No. 7, there was no basis for its continued assertion of an interest in the personal property collateral for that loan.

The bank also points out that under section 9-513, a termination statement renders a financing statement ineffective only if the applicable requirements of sections 9-509 and 9-510 are met. One of those requirements is that the secured party of record authorize the filing. Here, the bank asserts that it did not authorize Wells Fargo to file any termination statements, because the Wells Fargo letter referred only to the filing of "amendments," rather than terminations, and because the bank assumed it was releasing only the equipment collateral and not its entire security interest.

---

[1] The deed of trust includes a security interest in "Personal Property and Rents." The term "Personal Property" is defined in the deed of trust as

all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, **and** now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Deed of Trust, at 6 (Fil. No. 24, Ex. C) (emphasis added).

As defined, the personal property secured by the deed of trust is only the personal property attached or affixed to the real estate. It does not include any other personal property of the debtor.

These arguments are less convincing in light of the language within the four corners of the letters between the bank and Wells Fargo regarding the loan payoff. The letter from Wells Fargo is as follows:

September 20, 2007

To: Nebraska State Bank of Omaha
Attn: Kim Murray
. . .
Re: Negus-Sons, Inc.
Original Filing Office: Nebraska Secretary of State
Original UCC Filing Number(s): 9803165525-1; 9903287503-4

We are hereby requesting the payoff figures for the above listed customers as of September 28, 2007 (with per diem). Please provide signed copies of the payoff figures along with this signed Commitment letter.

This letter is to confirm that upon receipt of funds from Wells Fargo Equipment Finance, Inc. for the entire payoff of all accounts that you agree to terminate your security interest in all the collateral with all the companies listed above and forward all titles to the following address:
. . .

We have prepared an amendment to your UCC filing(s) to effectuate these terminations. Please indicate your consent to the filing of these amendments, and your authorization for us to file them on your behalf, by signing in the space provided below. . . .

Collateral Description(s):
See attached Schedule A consisting of Eight (8) pages, attached hereto and made part hereof.
. . .

>Thank you for your help.
>Wells Fargo Equipment Finance, Inc.
>/s/ J. Fry
>Jennifer Fry

Nebraska State Bank of Omaha
Agreed and consented this 21st day of September 2007.
By: /s/ Bruce Cramer    Title: SRVP

Fil. No. 36, Ex. 1.

The bank responded with the requested information:



**NEBRASKA STATE BANK**
3211 NORTH 90TH ST. / OMAHA, NE 68134
12307 WEST CENTER RD. / OMAHA, NE 68144
17041 LAKESIDE HILLS PLZ. / OMAHA, NE 68130
(402) 571-2300

September 21, 2007

Wells Fargo Equipment Finance, Inc.
Attn: Jennifer Fry
Fax: 1-800-417-9729
      3 Pages

The following is a payoff as of: <u>September 28, 2007</u>

    Customer:    Negus-Sons, Inc.
    Re:    UCC -1

    Loan:    #2104007

    Principal:    $848,437.99
    Interest:    <u>$   5,556.09</u>

    Total:    $853,994.08

    Per Diem:    $    241.57

<u>Upon receipt of payoff all liens will be released.</u>

<u>Please have payoff to Nebraska State Bank by 3:00 pm for that day's payoff.</u> If you have any questions, please call me at (402) 571-2300.

Sincerely,

*Kimberly J. Murray*
Kimberly J. Murray
Loan Administrative Assistant

Fil. No. 36, Ex. 2.

    The correspondence between the bank and Wells Fargo is clear that the U.C.C. "amendments" Wells Fargo intended to file upon the bank's authorization would terminate the

bank's security interest "in all the collateral." The bank representative consented in writing to this arrangement. If he had questions about the scope of the release or termination of the bank's interests, he could have contacted Wells Fargo for clarification. One who signs a document is presumed to have read that document and is bound by its terms. Krzycki v. Genoa Nat'l Bank, 496 N.W.2d 916, 922 (Neb. 1993).

Because the bank authorized Wells Fargo to file termination statements, the bank's U.C.C. financing statements were in fact terminated and it lost its lien priority position. See Crestar Bank v. Neal (In re Kitchin Equip. Co. of Virginia, Inc.), 960 F.2d 1242 (4th Cir. 1992) (bank's termination, rather than release, of its security interest permitted the trustee to step in and exercise his statutory lien rights); In re Lortz, 344 B.R. 579 (Bankr. C.D. Ill. 2006) (creditor's mistaken termination of lien on vehicle meant that trustee could exercise strong-arm powers to avoid the lien). The trustee's motion for partial summary judgment should be granted.

IT IS ORDERED: Mutual of Omaha Bank's motion for summary judgment (Fil. No. 21) is denied. The Chapter 7 trustee's motion for partial summary judgment (Fil. No. 31) is granted.

DATED:    June 20, 2011

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the court to:
    *Brian S. Kruse
    *Douglas E. Quinn
    Mark C. Milton
    Maynard H. Weinberg
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.